**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 10-20535-CIV-HUCK/O'SULLIVAN**

CAROLYN TRAVIS GILSON,
LAZ DEVELOPMENT CORP., and
G&C INVESTMENT JOINT VENTURE,

      Plaintiffs,

v.

TD BANK, N.A.,

      Defendant.

_____/

## <u>ORDER</u>

THIS MATTER is before the Court on the parties' cross motions for summary judgment. TD Bank has moved for summary judgment on both counts asserted against it, arguing that Plaintiffs' count under the Uniform Commercial Code, as adopted by Florida law, should be pursuant to UCC Article 4A, which governs wire transfers, instead of UCC Article 4, and that UCC Article 4A displaces or preempts Plaintiffs' other claim against TD Bank for negligence.[1] Plaintiffs, Carolyn Travis Gilson and the entities LAZ Development Corporation and G&C Investment Joint Venture, argue that they are entitled to summary judgment on TD Bank's affirmative defenses alleging an agency relationship between themselves and Edward Stein because the undisputed record shows that they had no agency relationship, whether actual or apparent, with Stein relative to the opening of the TD Bank accounts and the activity in those accounts. The Court has reviewed the parties' motions and factual submissions and for the reasons discussed below denies TD Bank's Motion for Summary Judgment and denies in part and grants in part Plaintiffs' Motion for Partial Summary Judgment.

_____

[1] Two other counts in Plaintiffs' Second Amended Complaint, Counts I and II, are asserted against TD Ameritrade. On March 26, 2010, the Court granted a Motion to Stay as to Gilson's claims against TD Ameritrade in light of Gilson's acknowledgment that such claims are subject to arbitration.

I.     **PROCEDURAL BACKGROUND**

This case involves Plaintiff Carolyn Travis Gilson's loss of over 3.5 million dollars. Plaintiffs, Ms. Gilson and the entities LAZ Development Corporation and G&C Investment Joint Venture, contend that Defendant TD Bank's negligence caused Gilson's financial injury.  More specifically, Plaintiffs allege that TD Bank's negligence permitted Edward T. Stein, Gilson's investment adviser[2], to open three bank accounts at TD Bank and transfer Gilson's money into and out of these accounts, all without her authorization.  In addition to their claim for negligence, Plaintiffs originally brought another claim under UCC Article 4 as adopted by Florida law.  TD Bank, on the other hand, argues that Plaintiffs' own actions and inactions, as well as the actions of Plaintiffs' agent, Edward Stein, caused their loss.  TD Bank pleads Stein's actual and apparent agency as affirmative defenses.  In these defenses, TD Bank alleges that Plaintiffs entrusted Stein to invest funds and conduct financial transactions on their behalf, gave him access to and control over their funds and that, pursuant to the Partnership Bank Agreement and For Profit Corporate Banking Resolution of the accounts at issue, he acted within the scope of his actual and apparent agency by, among other things, opening bank accounts at TD Bank.  TD Bank also pleads multiple, additional affirmative defenses based upon the alleged agency relationship between Stein and Plaintiffs.[3]

---

[2] Plaintiffs deny that Stein served as Gilson's investment adviser.  However, Plaintiffs' Second Amended Complaint, filed on January 18, 2010, after the filing of the cross motions for summary judgment being considered here, continues to reference Stein as Gilson's "investment adviser."  *See* Second Amended Complaint, D.E. # 101 at ¶ 11.

[3] These agency-based affirmative defenses, detailed in Plaintiffs' Motion for Partial Summary Judgment (D.E. # 46), are mitigation of damages (First Affirmative Defense), comparative negligence (Second and Third Affirmative Defenses), setoff (Fourth Affirmative Defense), equitable estoppel (Fifth Affirmative Defense), waiver (Sixth Affirmative Defense), unconscionability (Seventh Affirmative Defense), unclean hands (Eighth Affirmative Defense), failure to provide Defendant notice as required by statute (Ninth Affirmative Defense), failure to comply with account obligations (Tenth Affirmative Defense) and *Fabre* defenses (Sixteenth Affirmative Defense).

II.   **FACTUAL BACKGROUND**[4]

Carolyn Travis Gilson met Edward Stein through a long-time personal friend.  Following the death of her parents, Gilson requested Stein's assistance with four financial transactions, some of which related to her late parents' estate.  Gilson's attorney, Barry Nelson, suggested that Stein recommend annuities for Gilson's purchase and Stein received funds for this intended purchase. Nelson also requested that Stein facilitate the liquidation of an overfunded private equity fund, and a third company, NYPPEX, liquidated this fund.  Finally, Gilson asked Stein to invest money on her behalf in a legal services company, and she asked Stein to hold on her behalf for a short period of time certain Bank of America brokerage funds.

G&C Investment Joint Venture, a partnership, and LAZ Development Corporation are investment entities established by Gilson's late father.[5]  In November 2008, Stein opened three bank accounts at TD Bank, two in the name of G&C and one in the name of LAZ.  The account opening documents gave Stein signatory authority on these accounts; however, Stein testified that Gilson did not authorize him to add his name as an account signatory.  The record is unclear with regard to whether the accounts were opened via e-mail and also as to whether Stein provided TD Bank's branch manager, Mark Gusinov, with originals of the account opening documents.  Stein testified that he previously had referred various accounts to the TD Bank branch of which Gusinov was the manager.

Gusinov testified that the documentation required to open a commercial bank account at TD Bank, whether for a corporation, LLC or partnership included, among other things, a filing receipt, proof of tax I.D., and certificate of incorporation or partnership agreement.  Gusinov does not dispute that TD Bank's files do not contain a filing receipt for G&C, and Gusinov testified that he did not

---

[4] The following factual background is either undisputed or uncontroverted unless otherwise noted.

[5] Plaintiffs' Statement of Undisputed Material Facts in support of Partial Summary Judgment (D.E. # 46) states that Gilson is the sole shareholder, officer, director and owner of G&C and LAZ.  However, the deposition testimony cited by Plaintiffs does not support these factual assertions.  Rather, Gilson testified that she receives statements for the investment entities, G&C and LAZ, which were both established by her father, and that she is the only authorized signatory on the G&C account and the president of LAZ.

recall taking additional, standard steps to verify the entity G&C's existence.  TD Bank's expert testified that the partnership agreement, presumably for G&C, that he reviewed was not, in fact, the agreement that he thought it was.  On the signature cards for the G&C accounts, the account address is care of Stein's entity in New York and the phone number is a Long Island, New York number; however, Gusinov testified that he could not recall whether Stein told him that he was an officer, director and/or owner of G&C and that he, Gusinov, understood Stein's business to be that of an investment adviser.  Also, the account opening documents for the G&C accounts list two different names for the entity, "G&C Investment" and "G&C Investment Joint Venture Partnership," and the account opening documents for LAZ list two different addresses for that entity.  Gusinov testified that he had no reason for concern regarding the accounts at issue in part because of the professional relationship he had with Stein – that is, the fact that they shared other clients and Stein had brought other relationships to the bank.  Gusinov also testified that there was nothing out of the ordinary about how the bank went about the accounts at issue with Stein.

Following the account openings and through March 2009, Stein transferred approximately $ 3.5 million of Plaintiffs' funds into, and then out of, these TD Bank accounts.  The accounts were funded exclusively through six wire transfers.  Stein had access to the money he used to fund the TD Bank accounts because of the transactions for which he was purportedly providing assistance to Gilson, detailed above.  Plaintiffs also contend, and TD Bank does not contest, that Stein transferred the funds out of the accounts for his own purposes and that these outgoing transfers were effectuated via wire.

Plaintiffs moved for partial summary judgment on TD Bank's agency-based affirmative defenses, arguing that the undisputed record shows that no agency relationship, whether actual or apparent, existed between Plaintiffs and Stein regarding the opening of the accounts in question and the activity in those accounts.  TD Bank similarly moved for summary judgment on both counts asserted against it, arguing that Plaintiffs' UCC count should be brought under Florida law's adoption of UCC Article 4A, not Article 4, and that UCC Article 4A displaces or preempts Plaintiffs' negligence claim.  Thereafter Plaintiffs sought, and the Court granted, Plaintiffs leave to file a Second Amended Complaint.  This Second Amended Complaint, filed on January 18, 2011, removes the UCC Article 4 Count and replaces it with two counts asserted in the alternative, Count

4

IV under Florida law's adoption of UCC Article 4A and Count V under Federal Regulation J, 12 C.F.R. §§ 210.25–32.  Therefore, this Second Amended Complaint moots one of the two grounds for summary judgment advanced in TD Bank's motion.  The Court now turns to Plaintiffs' Motion for Partial Summary Judgment (D.E. # 46) and the remaining portion of TD Bank's Motion for Summary Judgment (D.E. # 42).

III.   **ANALYSIS**

    A.   **Plaintiffs' Motion for Partial Summary Judgment**

Under Florida law, "[t]he existence of an agency relationship is ordinarily a question to be determined by a jury in accordance with the evidence adduced at trial." *Orlando Executive Park Inc. v. Robbins*, 433 So. 2d 491, 494 (Fla. 1983); *see also Citibank, N.A. v. Data Lease Financial Corp.*, 828 F.2d 686, 691 (11th Cir. 1987) ("It is well settled under Florida law that, the existence of an agency relationship, the nature and extent of the agent's authority, and the inclusion within the scope of that authority of a particular act are ordinarily questions to be determined by the jury or by the trier of facts in accordance with the evidence adduced in the particular case.") (internal citation omitted). The issue of an agency relationship may be resolved by summary judgment only in instances where "the evidence is capable of just one interpretation." *Kobel v. Schlosser*, 614 So. 2d 6,7 (Fla. 4th DCA 1993) (reversing summary judgment below which had found no liability on a theory of agency).  TD Bank's Affirmative Defenses allege the existence of both an actual agency and an apparent agency relationship between Plaintiffs and Stein.

       1.   **Actual Agency**

"The essential elements of an actual agency relationship are: (1) acknowledgment by the principal that the agent will act for him or her, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Robbins v. Hess*, 659 So. 2d 424, 427 (Fla. 1st DCA 1995) (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990)).  "The agent's authority may be conferred by writing, by parole, or it may be inferred from the related facts of the case." *Thompkin Corp. v. H.D. Miller,* 24 So. 2d 48, 49 (Fla. 1945); *see also* Restatement (Second) of Agency § 26 (1958) ("Except for [under certain circumstances], authority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.")

Plaintiffs argue that TD Bank has not satisfied its burden of producing evidence regarding Plaintiffs' consent to Stein's agency, element (1) of the actual agency relationship, because the strongest testimony in support of TD Bank's position shows that Gilson had only a general awareness regarding the TD Bank accounts and did not specifically authorize Stein to a) open multiple accounts on behalf of G&C and LAZ, b) add himself as a signatory to those accounts, c) transfer funds into those accounts and d) transfer funds out of those accounts.  As legal support, Plaintiffs rely principally on *Pardo v. Tanning Research Laboratories, Inc.*, 996 F. Supp. 1222 (M.D. Fla. 1998).  In that case, the Court states that "[u]nder Florida law, actual agency occurs when the principal specifically authorizes its agent to take certain actions," and notes that under its facts, no such actual authority was alleged.  *Id.* at 1225.

The Court finds that Florida's doctrine of actual agency does not require the principal to minutely specify the acts for which the agent's authority exists so long as these acts are incidental to or reasonably necessary to accomplish what is authorized by the grant of express authority.  *See Board of Trustees of the City of Delray Beach Police and Firefighters Retirement System v. Citigroup Global Markets, Inc.*, 622 F.3d 1335, 1342–43 (11th Cir. 2010) (finding that the principal's express authorization for its agent to execute the contract "implied the authority to do acts that are incidental to it, usually accompany it, or are reasonably necessary to accomplish it." )(citing 2 Fla. Jur. 2d Agency & Employment § 47 (2005)).  Indeed, *Board of Trustees of Delray Beach* surveys various Florida cases in which an agent's actual authority includes the implied authority for other actions, such as a real estate agent's implied authority to make representations concerning the characteristics of a property to be sold.  622 F.3d at 1343.  *Pardo,* relied upon by Plaintiffs to the contrary, does not, upon closer examination, undermine the Court's finding.  *Pardo* cites *Cavic v. Grand Bahama Development Co.*, 701 F.2d 879, 885 (11th Cir. 1983) for the proposition that actual agency occurs "when the principal specifically authorizes its agent to take certain actions."  996 F. Supp. at 1225.  However, *Cavic* actually stated that "no such showing [of specific authorization to do an act] is required under Florida law for a principal to be bound by the acts of its agent and an agent's authority need not be conferred in express terms, but may be implied under justifying circumstances . . . . Even when an agent's act is unauthorized, the principal is liable if the agent had the apparent authority to do the act."  *Id.* at 885–86.

6

Under the proper test for actual agency, the Court finds that a genuine issue of material fact exists regarding whether Gilson consented to Stein acting as Plaintiffs actual agent for purposes of opening the three TD Bank accounts at issue.  Stein testified that Gilson became aware of the TD bank accounts "[b]y signing the TD Bank signature cards that were faxed to her."  (Stein Dep. Tr., D.E. # 46-2 at 144:7–13.)  In his deposition, Stein also stated that he did not forge or otherwise manipulate Gilson's signature on the TD Bank account-opening documents, including the Partnership Agreement and Corporate Resolution, nor is he aware of anyone else doing so.  TD Bank's handwriting expert corroborates Stein's testimony on this point.  The expert concludes that Carolyn Gilson signed the TD bank account documents.  According to Stein "she [Gilson] signed the [account] documents; that they were blanks; but that they were signed and faxed back to us and filled in later."  (Stein Dep. Tr. at 144:14–25.)  The portions of the record indicating that Gilson signed blank TD Bank account-opening documents and returned these documents to Stein creates an issue of fact as to whether Plaintiffs authorized Stein to open the three bank accounts in the names of G&C and LAZ at issue in this case.

Moreover, the Court concludes that Gilson's authorization for Stein to conduct the transactions related to her and her late parents' finances (discussed *supra* at pages 1-2) combined with Gilson's course of conduct regarding her finances during the relevant time period creates a triable issue of fact regarding Gilson's consent to Stein's opening the three TD bank accounts as Plaintiffs' agent.  Stein testified that the funds from the overfunded equity fund transaction were deposited in TD Bank consistent with the requirement that these funds be placed in a depository account and that Gilson agreed that her funds at a Bank of America account should be transferred to a third-party institution.  Gilson testified that following her parents death she had so many responsibilities that sometimes she, sometimes her husband, and sometimes her lawyer handled matters related to her parents' estate.  She also testified that she gave Stein access to her personal information, including her drivers license and bank account numbers, and on Gilson's behalf, Stein spoke with her lawyer, accountants and brokers regarding various financial transactions.  Gilson's lawyer testified that Stein was going to try to "get a better handle" on Gilson's overall assets and her husband testified that Stein's relationship with Gilson regarding one of the financial transactions at issue was "unstructured and based on friendship rather than formal agreements."  (Nelson Dep. Tr.,

7

D.E. # 64-1 at 31:24–32:3; Chris Gilson Dep. Tr., D.E. # 63-1 at 48:11–18.)

For the same reasons, the Court finds that a genuine issue of material fact exists with regard to Gilson's consent to Stein acting as Plaintiffs' agent for purposes of transferring money into the TD bank accounts.   Stein testified that Gilson authorized the liquidation of the overfunded trust funds, that these funds were deposited in TD Bank consistent with the requirement that these funds be placed in a depository account and that Gilson agreed that her funds at a Bank of America account should be transferred to a third-party institution.   This testimony combined with the evidence regarding the business methods of Gilson and the relationship between Gilson and Stein is enough to create a triable issue of fact regarding whether an agency relationship existed between Plaintiffs and Stein with regard to the funds transfers into the TD Bank accounts.   *See* Restatement (Second) of Agency § 34 (1958) (indicating that the authorization of agency should be interpreted in light of accompanying circumstances, including, *interalia*, "the situation of the parties, their relations to one another . . . and the business methods of the principal.")

Finally, with regard to Stein's status as a signatory on the accounts and his transfer of money out of the accounts, TD Bank's Statement of Disputed Material Facts does not contest that Gilson did not authorize these actions and Stein testified that Gilson did not authorize his status as signatory.   Nonetheless, a reasonable jury  could find that Stein's broad, informal actual authority regarding the financial transactions related to Gilson's and her parents' finances encompassed being added as a signatory to Plaintiffs' bank accounts.   On the other hand, the Court finds that a reasonable jury could not find that Stein's actual authority with regard to the TD Bank accounts and/or Gilson's finances more generally included the power to transfer money out of the TD Bank accounts for his own benefit.   On this point, Stein testified that the outgoing transfers were not done for Gilson's benefit and were all unauthorized by her.   Therefore, the undisputed record shows that no actual agency relationship existed between Stein and Plaintiffs with regard to Stein's transfer of funds out of the TD Bank accounts under these circumstances.   Accordingly, the Court will grant Plaintiffs summary judgment in part on this limited issue.

Plaintiffs also argue that TD Bank has not submitted evidence on the third element of actual agency, the principal's control of the agent's actions.   "When one considers an action based on actual agency, it is the right to control, rather than actual control, that may be determinative."   *Villazon v.*

8

*Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 (Fla. 2003); *see also Hickman v. Barclay's International Realty, Inc.*, 5 So. 3d 804, 806–07 (Fla. 4th DCA 2009) (reversing lower court's summary judgment finding as a matter of law that no agency relationship existed because portions of the record indicated that the alleged principal had the right to control, even if he did not have actual control). To support their position that they did not exercise control over and/or did not have the right to control Stein with respect to the TD Bank accounts, Plaintiffs point to the same testimony from Stein used to argue that Gilson was unaware of and therefore did not authorize the wire transfers into and out of the accounts. They also highlight that Stein listed his address and phone number on the TD Bank accounts so that he could maintain control of the account information and provide the information to the Gilsons at a later date. These facts do not establish as a matter of law that Plaintiffs did not have actual control over or the right to control Stein's activities at issue. Rather, a jury could find that Plaintiffs had, but simply chose not to exercise, control and supervision over Stein's authorized actions as their agent. *See* Chris Gilson Dep. Tr. at 45:17–25 (when asked whether "anybody was overseeing Mr. Stein's activities with regard to various transactions," responding "[i]n retrospect that's an awfully good question.")

Viewing the record in the light most favorable to TD Bank, the Court concludes that the evidence is subject to more than one interpretation regarding the alleged actual agency relationship between Plaintiffs and Stein with respect to the opening of the TD Bank accounts, Stein's status as signatory on these accounts and the transfer of funds into those accounts. Therefore, the Court denies Plaintiffs summary judgment on these aspects of the alleged actual agency relationship. However, the Court finds as a matter of law that Plaintiffs' alleged grant of actual authority to Stein did not encompass the implied authority to transfer money out of the TD Bank accounts not for Gilson's benefit and grants Plaintiffs summary judgment on TD Bank's agency-based affirmative defenses with respect to this limited issue.

2. **Apparent Agency**

An apparent agency relationship requires the following elements: "(a) a representation by the purported principal; (b) a reliance on that representation by a third party; and c) a change in position by the third party in reliance on the representation." *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995). Even if the principal is silent, apparent authority can arise when the principal by

9

his or her actions creates a reasonable appearance of authority. *Borg-Warner Leasing v. Doyle Electric Co., Inc.,* 733 F.2d 833, 836 (11th Cir. 1984).

Under this standard, Plaintiffs' argument that an apparent agency relationship between Stein and Plaintiffs did not exist as a matter of law because Plaintiffs never communicated directly with TD Bank is unavailing. As discussed above, Stein testified that Gilson signed the TD Bank account opening documents in blank and returned those signed documents to him. Based on Gilson's actions giving Stein blank, executed new account documents for the TD bank accounts, a jury could find that Gilson created a reasonable appearance of Stein's authority with regard to the handling of those accounts. *See Borg-Warner Leasing*, 733 F.2d at 836 (though the principal never informed the third-party that Myers was its agent, a trier of fact could reasonably conclude that the principal gave the impression of agency because the principal entrusted Myers with forms bearing its letterhead and Myers was the third-party's sole point of contact with the principal). The Court also finds that Gilson's representations to the community regarding Stein also preclude finding that no apparent agency relationship existed between them as a matter of law. *See Amvest Capital Corp. v. Banco Exterior de Espana*, 675 F. Supp. 640, 643–44 (S.D. Fla. 1987) (finding that because alleged agent was known as company's representative in the financial community and included in company's advertising campaign and annual reports the court could not conclude as a matter of law that the company did not create the reasonable appearance of agency). As discussed in the previous section, Stein spoke with Gilson's lawyer, accountant and brokers regarding her financial matters at her request.

Plaintiffs also assert that TD Bank points to no evidence to establish that TD Bank actually relied upon Plaintiffs' alleged representations or changed its position based upon that reliance. In response, TD Bank argues that in reliance upon Plaintiffs representations, made through Gilson's return of the executed account opening documents, TD Bank opened the accounts at issue and allowed Stein to conduct transactions regarding those accounts. The Court finds that this argument is supported by the record. Therefore, the Court concludes that the record presents genuine issues of material fact regarding an apparent agency relationship between Stein and Plaintiffs that preclude summary judgment on this issue.

B.    **TD Bank's Motion for Summary Judgment**

In its Motion for summary judgment, TD Bank argues that it is entitled to judgment as a matter of law because (1) the transactions at issue are wire transfers governed by UCC Article 4A, not Article 4 and (2) UCC Article 4A, as adopted by Florida law, preempts[6] Plaintiffs' negligence claim.  As discussed *supra,* the Court allowed Plaintiffs leave to amend to assert a claim under Florida law's codification of UCC Article 4A, and, therefore, Plaintiffs' Second Amended Complaint moots TD Bank's first argument on summary judgment.[7]  The discussion below therefore concerns only TD Bank's argument that UCC Article 4A preempts Plaintiffs negligence claim against it.

Article 4A of the UCC, as adopted by Florida law, "governs a specialized method of payment referred to in the Article as a funds transfer but also commonly referred to in the commercial community as a wholesale wire transfer."  Fla. Stat. § 670.102, Official Comment.  The Eleventh Circuit has spoken on the scope of UCC Article 4A and, more specifically, the scope of its preemption of common law claims.  In *Regions Bank v. Provident Bank Inc.*, 345 F.3d 1267, 1274–75 (11th Cir. 2003), the court concluded that, while Article 4A was intended as a comprehensive body of law regarding funds transfers, it "is not the exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer."

> [T]he only restraint on a plaintiff [seeking to redress an alleged harm arising from a funds transfer] is that resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities *inconsistent* with those stated in this Article.

*Regions Bank v. Provident Bank Inc.*, 345 F.3d 1267, 1275 (11th Cir. 2003) (emphasis in

---

[6] While the parties use the term "displacement" to describe the interaction between the UCC, as adopted by Florida statute or federal regulation, and the common law, the Eleventh Circuit, as more fully described below, uses the term "preemption" in *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267 (11th Cir. 2003).  Accordingly, the Court uses the phrase "preemption" in this opinion.

[7] Because Plaintiffs' Second Amended Complaint concedes the applicability of UCC Article 4A, the Court will not address Plaintiffs' argument in its opposition memorandum that Article 4A does not apply because the wire transfers at issue are debit transfers, not credit transfers, as those concepts are defined by the Official Comment to Fla. Stat. § 670.104 and TD Bank's response to this argument at pages 3 to 6 of its Reply Memorandum (D.E. # 82).

original) (internal quotations omitted).

*Regions* involved the fraudulent activity of a independent mortgage lender named Morningstar. Morningstar had a warehouse loan agreement with Provident Bank, who had demanded repayment of Morningstar's outstanding loans due to suspicions of Morningstar's criminal conduct. 345 F.3d at 1270–71. Around the same time, Morningstar entered into a separate warehouse loan agreement with a second bank, Regions. *Id.* at 1271. Pursuant to this agreement, Morningstar requested that Regions wire funds to the account of third-party closing attorneys at Fleet Bank. *Id.* Morningstar's President and CEO later fraudulently claimed that these wire transfers were made in error and instructed Fleet to wire the money into Morningstar's personal account at Provident Bank. *Id.* Provident applied the wire-transferred funds against Morningstar's outstanding debt to the bank; although shortly after doing so, it received notice of Morningstar's possible fraud. *Id.* at 1272. After Provident refused to return and/or repay to Regions the funds that were wired into Morningstar's account, Regions sued Provident asserting state law claims for among others, conversion and unjust enrichment. *Id.* at 1273. Provident defended on the theory that UCC Article 4A preempted Regions state law claims, and the district court agreed. *Id.* On appeal, the Eleventh Circuit came to a different conclusion regarding preemption. The Court found that Article 4A was silent with regard to claims based on Regions' theory–that is, the theory that a beneficiary bank accepted funds when it knew or should have known that the funds were fraudulently obtained. *Id.* at 1275. Therefore, under the test that rights and liabilities not inconsistent with those set out in Article 4A survive preemption, "Article 4A does not preempt a state law claim if money is transferred by wire to a party that knows or should have known that the funds were obtained illegally." *Id.* at 1279.

Plaintiffs argue that this case is analogous to *Regions* because their negligence claim is based on the TD Bank's constructive knowledge of the fraudulent nature of the wire transfers. Had TD Bank followed its security procedures, Plaintiffs claim, the Bank would have known that Stein was not authorized to open the subject bank accounts, much less wire transfer money in and out of them. While the Court agrees with Plaintiffs' argument on this point, it finds that they advance an even stronger argument for denying Article 4A preemption. As Plaintiffs point out, the basis for their negligence claim extends beyond TD Bank's conduct with regard to the wire

transfers into and out of the accounts.  Indeed, Plaintiffs' negligence claim centers on the Bank's allegedly negligent and reckless conduct with regard to opening the accounts.  Plaintiffs' Second Amended Complaint alleges that TD Bank acted with gross negligence and recklessness in numerous ways during the account openings, and the record shows a genuine issue of material fact on this issue.  Plaintiffs have come forward with evidence that TD Bank deviated from its standard account opening procedures by not receiving a filing receipt or partnership agreement for G&C.  Moreover, Plaintiffs evidence shows that TD Bank failed to notice inconsistencies on the account opening documentation for the G&C accounts, such as the discrepancy between the account address and phone number, which were Stein's, and Stein's professed limited role as investment adviser.  Because the crux of Plaintiffs' negligence claim is TD Bank's lack of care during the account openings, not the wire transfers, the Court finds that the negligence claim does not create rights, duties and liabilities *inconsistent* with those stated in Article 4A, which governs only wire transfers.  For the same reasons, the Court finds that Plaintiffs' negligence claim extends beyond the scope of Florida Statute § 670.204 (a portion of Article 4A), which defines liability regarding unauthorized wire transfers.  Therefore, the Court holds that UCC Article 4A as adopted by Florida law does not preempt Plaintiffs' negligence claim.[8]

The Court finds *In re Bancredit Cayman Limited v. Regions Bank Corp.*, 419 B.R. 898 (Bank. S.D. Fla. 2009), relied upon by TD Bank in support of its UCC Article 4A preemption argument, unpersuasive.  In *Bancredit*, the court does not cite *Regions Bank v. Provident Bank Inc.*, 345 F.3d 1267 (11th Cir. 2003) and expands UCC Article 4A preemption beyond the test articulated by the Eleventh Circuit in *Regions*.  Plaintiff Bancredit alleged that Defendant Regions Bank engaged in various wrongdoing that resulted in the transfer of money from Plaintiff's accounts to

---

[8]  Because the facts supporting Plaintiffs' negligence claim concern more than simply wire transfers, their claim presents an even stronger case against preemption than the claims at issue in *Regions* and *Sheerbonnet Ltd. v. American Express Bank, Ltd.*, 915 F. Supp. 403 (S.D.N.Y. 1995), a case cited extensively in *Regions*.  In those cases, plaintiff's claims were based on one or more wire transfers alone.  *See Regions Bank*, 345 F.3d at 1270–73 (recitation of facts); *Sheerbonnet*, 915 F. Supp. at 413 (stating that the gravamen of plaintiff's complaint was that defendant followed wire transfer instructions despite knowledge of the worldwide seizure of a third party's assets).

13

the accounts of an affiliate and sued for violation of Article 4A as well as for breach of contract. 419 B.R. at 907. Defendant defended on Article 4A preemption grounds, among others. *Id.* In deciding the preemption issue, the court acknowledged that the breach of contract claims were based on various acts, namely the purchase of various Certificates of Deposit and opening of a bank account, beyond the unauthorized wire transfer. *Id.* at 913. However, it went on to find Plaintiff's breach of contract claims preempted by Article 4A because the wire transfer was the but-for cause of Plaintiff's harm – "the loss suffered by the Plaintiff occurred only when, and solely because of the Funds Transfer." *Id.* at 914. In essence, the *Bancredit* court adopted a but-for causation test for UCC Article 4A preemption different from, and arguably stricter than, the Eleventh Circuit's test in *Regions*. This Court is bound by *Regions Bank v. Provident Bank Inc.*, 345 F.3d 1267 (11th Cir. 2003) and declines to follow *Bancredit*.

    *Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So. 2d 967 (Fla. 3d DCA 1998), another case relied upon by TD Bank, is also of little support. In that case, Corfan originated a wire transfer to Ocean Bank that incorrectly identified the client's bank account number. 715 So. 2d at 968. After noticing its error, Corfan sent a second wire transfer; however, Ocean Bank had also noticed and corrected the account number error so the client's account was credited twice. *Id.* After the client withdrew the proceeds of both transfers and Ocean Bank refused to repay, Corfan sued under Florida law's UCC Article 4A and common law negligence. *Id.* The court dismissed Corfan's negligence count finding it preempted by Article 4A; however, as the facts show, *Corfan* is wholly distinguishable from the instant case. *Corfan* concerned a wire transfer with a typographical error, precisely the type of situation firmly contemplated by Article 4A. *See Sheerbonnet*, 951 F. Supp. at 412 ("The rules of the article [4A] are transactional, aimed essentially at resolving conflicts created by erroneous instruction or execution of payment orders.") Moreover, *Corfan* did not involve alleged negligence beyond the scope of the erroneous wire transfer analogous to TD Bank's alleged negligence in opening the subject bank accounts.

    The Court notes that Plaintiffs' Second Amended Complaint adds a claim in the alternative under Federal Regulation J, 12 C.F.R. §§ 210.25–32. Regulation J applies UCC Article 4A to wire transfers conducted using Fedwire, the Federal Reserve Banks' funds transfer system. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1228, 1232 (11th Cir. 2000). TD Bank's Reply Memorandum

argues that to the extent Regulation J, not Florida law, applies because the wire transfers at issue are Fedwire transfers, Regulation J, like Florida's codification of UCC Article 4A, would preempt Plaintiffs' negligence claim.[9]  For the same reasons that the Court finds that Florida's codification of Article 4A does not preempt Plaintiffs negligence claim, discussed above, it similarly finds that Regulation J does not preempt Plaintiffs' negligence claim.  Indeed, the Court notes that *Regions Bank v. Provident Bank Inc.*, the Eleventh Circuit case regarding UCC Article 4A preemption, involved UCC Article 4A's codification by Regulation J, not state statute.  *See* 345 F.3d 1267, 1274 (11th Cir. 2003).

## IV.   **CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that Plaintiffs' Motion for Partial Summary Judgment is DENIED IN PART AND GRANTED IN PART and TD Bank's Motion for Summary Judgment is DENIED.

DONE and ORDERED in Chambers, Miami, Florida, January 27, 2011.

_____

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of record

---

[9] The Court denied Plaintiffs' Motion to Strike this portion of TD Bank's Reply Memorandum in its December 16, 2010 Order (D.E. # 98).